UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00320-WYD

TAMMY L. MOORE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits ["DIB"] and Supplemental Security Income ["SSI"] benefits (Transcript ["Tr."] 28, 89-93, 300-04) under the Social Security Act ["the Act"], 42 U.S.C. §§ 1381-83c. For the reasons stated below, this case is reversed and remanded for further factfinding.

Plaintiff, born in November 1961 (Tr. 89) completed high school and had a cosmetology license. (*Id.* 109). She worked in the past as a cosmetologist, receptionist, office worker, cleaner, and restaurant hostess. (*Id.* 104, 112-19, 352-53.) Her last job was a part-time dog walking position, which ended December 30, 2006. (*Id.* 152.) Plaintiff claimed that she became disabled on October 25, 2003, when she was 41 years old because of physical problems including shoulder/neck/head pain and cognitive problems, including attention and concentration problems. (*Id.* at 103.) These

problems were attributed to an automobile accident which occurred on October 25, 2003. (*Id.*)

Plaintiff's applications for DIB and SSI were denied on initial review. (Tr. 70-73, 305-09.) Plaintiff requested review, and a hearing was held before an Administrative Law Judge ["ALJ"] on December 6, 2006. (*Id.* 312-58.) On December 28, 2006, the ALJ issued a decision denying Plaintiff's claim. (*Id.* 28-39.) This decision is discussed in more detail below. The Appeals Council declined review of the ALJ's decision. (*Id.* 6-9.) The ALJ's decision is the final administrative decision, and this case is ripe for judicial review.

II.  ANALYSIS

   A.  The ALJ's Decision

   The ALJ made the following findings:

   1.  Plaintiff has not engaged in substantial gainful activity since her alleged onset date of October 25, 2003. (Tr. 30, Finding 2.)

   2.  Plaintiff has the following severe impairments: cervical strain injury with secondary myofascial pain syndrome and chronic pain syndrome, muscular contraction headaches, mild closed head injury versus psychogenic etiology, lumbosacral spine injury with secondary myofascial pain syndrome, cognitive disorder NOS, and depressive disorder NOS. (Tr. 30-31, Finding 3.)

   3.  Plaintiff does not have an impairment or combination of impairments that meets or equal one of the list impairments. (Tr. 31, Finding 4.) However, as a result of her mental impairments she has mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no documented episodes of decompensation, each of extended duration. (*Id.*)

   4.  Plaintiff retains the residual functional capacity ["RFC"] to perform work with the following limitations: avoid exposure to unprotected heights, moving machinery, climbing ladders and scaffolds, extreme cold, and

      operating commercial vehicles; she can lift and carry 10 pounds frequently and 20 pounds occasionally; sit at least one hour at a time and six hours a day; stand and walk for 30 minutes each at a time and a total of four hours each a day; occasionally stoop and avoid kneeling and crouching; at least frequently reach, handle, finger, push and pull; and can carry out, understand, and remember routine and repetitive tasks and instructions in an environment with no frequent changes in work setting or duties. (Tr. 31, Finding 5.) Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (*Id.* 32.) However, Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms "are not fully persuasive." (*Id.*)

5. Plaintiff, who was 41 years old on the allege disability onset date and was thus a younger individual, could not perform her past relevant work. (Tr. 37, Findings 6 and 7.) However, she could perform other work existing in significant numbers, including office helper, production assembler and bench assembler. (*Id.* 38, Finding 10.) The jobs of light assemblers would be eroded by 50% to account for specific limits in standing. (*Id.*) Plaintiff was not disabled within the meaning of the Act during the time period relevant to this case (October 25, 2003, her alleged onset date, and December 28, 2006, the date of the ALJ's decision). (Tr. 39, Finding 11.)

B. <u>Standard of Review</u>

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    C.    <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

        1.    <u>Whether the ALJ Erred in Giving Lesser Weight to the Opinions of Plaintiff's Treating Physicians Than to Those of the Consultative Examiners</u>

Plaintiff argues that the ALJ did not give proper weight to her treating providers. Those providers were Brian T. Shea, O.D., whom she saw on twelve separate occasions between July 7, 2004 and October 12, 2004 (Tr. 223-239), and Mary Ann Keatley, Ph.D., whom she saw fifteen times between July 7, 2004 and October 13, 2004, and again on October 3, 2006 (*Id.* 240-261, 288-291). In addition, Plaintiff was evaluated by three medical consultants, each of whom met with her on a single date: Christopher A. Pierce, Ph.D., who saw Plaintiff on June 3, 2004 (*id.* 180-191); Kristi V. Helvig, Ph.D., who saw Plaintiff on July 29, 2005 (*id.* 262-268); and Peter S. Quintero, M.D., who saw Plaintiff on July 14, 2006 (*id.* 277-286). The ALJ chose to give weight to the consultative examiners' opinions instead of the treating sources opinions. I find for the reasons stated below that the ALJ did not properly weigh the medical evidence and that the case must be remanded to Commissioner on this basis.

Turning to my analysis, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). The ALJ must give specific, legitimate reasons for

disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994).

"A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ is not, however, entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (in choosing to reject a treating physician's assessment, "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*) (emphasis in original).

I first address Dr. Shea's opinions. The ALJ noted that Plaintiff described to Dr. Shea having whiplash and hitting her head during the accident. (Tr. 33.) He also noted that Dr. Shea found decreased cervical and lumbar range of motion but normal gain, negative straight leg raising test, and symmetric deep tendon reflexes. (*Id.*) Dr. Shea "diagnosed cervico/thoracic ligamentous strains and postconcussive syndrome for which osteopathic manipulative treatment (OMT) and massage therapy was offered." (*Id.*)

The ALJ did not state what weight, if any, he was giving Dr. Shea's findings in his clinical notes. Instead, he appeared to dismiss Dr. Shea's findings for alleged "inconsistencies" in symptoms Plaintiff had testified about that were not disclosed in

Dr. Shea's clinical notes (incontinence, ringing in her ears, dizziness and daily nausea). (Tr. 33.) He may also have dismissed Dr. Shea's opinions because of Plaintiff's inconsistencies in reporting what happened in the car accident—she told Dr. Shea that she had whiplash and had hit her head in the car accident which was different from what was reported in the Boulder Community Hospital emergency records on the day of the injury and from the records of Boulder Bodyworks on December 19, 2003. (*Id.* 221.) The ALJ found that "[t]hese inconsistencies diminish persuasiveness of the testimony of the claimant and the witness". (*Id.* 33). The ALJ also noted that Dr. Shea had not provided work-related limitations. (*Id.*)

I find that the ALJ erred in his assessment of Dr. Shea's findings. First, the ALJ did not specifically state what weight, if any, he was giving to Dr. Shea's findings in his notes. This was error that must be corrected on remand. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'[A]n ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'" (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)). While the Commissioner argues that Dr. Shea did not make any findings that trigger the factors to be considered when determining the weight to be given to a medical source opinion, I disagree. Dr. Shea made many medical findings in his notes—findings which support the impairments complained of by Plaintiff. In addition to making diagnoses regarding Plaintiff's condition, he also noted many other issues that need to be adequately addressed, including fatigue, dizziness, vision problems, and other issues.

Second, I find that some of the reasons purportedly given by the ALJ for discounting Dr. Shea's findings are not supportable. The fact that Plaintiff may have told Dr. Shea something different about the car accident than other medical providers and/or may not have complained to him of all her reported symptoms does not provide a basis to discount Dr. Shea's findings, which appear to be based on objective medical findings from an examination. A medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those findings in the absence of conflicting evidence. *Id.*

I also find that the ALJ cannot fault Dr. Shea for not containing work restrictions in his clinical notes, since Dr. Shea noted that Plaintiff was not working. (Tr. 236.) Thus, there was no reason for him to assess work limitations. However, it was proper fr the ALJ to consider the fact that Dr. Shea was asked to provide a Physical Medical Source Statement but did not do so. (*Id.* 287.) There was no duty on the part of the ALJ to contact Dr. Shea again or further develop the record on that issue.

Because I find that Dr. Shea's findings were not properly evaluated, I find that the ALJ must reweigh all the evidence in the case regarding Plaintiff's physical impairments, including the opinion of Dr. Quintero. The ALJ relied on Dr. Quintero's report to support his findings regarding Plaintiff's physical limitations, or lack thereof.

I note as to Dr. Quintero's assessment that while Plaintiff complained of significant pain (which is substantiated throughout the record), he failed to address how that impacted her ability to perform work-related tasks. Instead, he appeared to base his findings only on the fact that Plaintiff "has very little as far as objective findings on

neurological examination." (Tr. 286). Pain is, however, not something that is diagnosed through objective tests and is a factor that must be considered. The ALJ did not consider this nor did he conduct a proper pain analysis. Indeed, I do not see any discussion of the factors that must be considered in addressing a claimant's pain. *See Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987). This must be addressed on remand. Further, on remand, it must be shown that "'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)).

Also, although not raised by Plaintiff, I see other problems with reliance on Dr. Quintero's findings based on a lack of objective evidence. The ALJ acknowledged that Plaintiff's severe impairments include headaches. Further, the record from Dr. Shea and otherwise shows that Plaintiff was suffering from other symptoms or impairments including fatigue and dizziness. These impairments are not necessarily diagnosed through objective diagnostic tests, which was not taken into account by Dr. Quintero or the ALJ. *See, e.g., Lozano v. Astrue*, No. 06-15935, 2008 WL 833153, at *1 (9th Cir. 2008); *Thompson v. Barnhart,* 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006); *see also Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at *3 (10th Cir. 1997) ("we are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain"). The Tenth Circuit has made clear that an ALJ errs when he requires such objective evidence for impairments where there is no such test. *Sisco v. U.S. Dept. of Health and Human Servs.*, 10 F.3d 739, 743-44 (10th Cir. 1993). These impairments

can, however, have a substantial effect on Plaintiff's ability to work.  The ALJ needs to consider these issues on remand.

I now turn to the opinions of Dr. Keatley, another treating source.  Dr. Keatley, a certified neurotherapist and speech language pathologist, conducted testing on Plaintiff from the *Woodcock-Johnson III Tests of Cognitive Abilities.* (Tr. 244-247, 288-291.)  As the ALJ noted, "the test results showed cognitive-linguistic deficits primarily affecting the areas of speed of processing, cognitive efficiency, short-term memory, long-term retrieval, and auditory processing that coincided with the claimant's reported problems, were consistent with a concussive-type injury, and for which she recommended cognitive-linguistic treatment." (*Id.* 35.)

In July 2006, Dr. Keatley stated in response to a request to provide a medical source statement for Plaintiff, that she declined to do so because she had not treated Plaintiff for almost two years.  (Tr. 35, 272.)  However, in October 2006, Dr. Keatley stated that she had performed a repeat assessment of Plaintiff's status and submitted a Medical Source Statement of Ability to do Work-Related Activities (Mental), stating that she had performed a repeat assessment of Plaintiff's status.  (*Id.* 35, 288-91.)  In that Statement, Dr. Keatley opined that Plaintiff had marked to extreme limitations in her ability to understand, remember and carry out instructions, make judgments in work-related decisions, interact appropriately with others, and respond appropriately to usual work situations and to changes in a routine work setting.  (*Id.* 289-90.)  Dr. Keatley also opined that Plaintiff was easily overwhelmed, had to leave situations with environmental noise, got frustrated, cried, and became dizzy and nauseated.  (*Id.* 290.)  Dr. Keatley indicated that Plaintiff's speed of processing was at the first percentile and she could not

problem solve or reason adequately. (*Id.*) She also opined that Plaintiff could not perform tasks requiring extended standing or thinking because of dizziness. (*Id.*)

The ALJ found that Dr. Keatley's assessment "is not persuasive and is entitled to very little weight." (Tr. 36.) However, it appears that he gave the assessment no weight, although this is not clear. The ALJ gave five reasons for giving "little weight" to the assessment. First, he asserted that she was an acceptable medical source "only for purposes of establishing speech or language impairments." (*Id.*) Second, he stated that she treated Moore for only "a relatively brief period of time (July 2004 to December 2004)." (*Id.*) Third, she did not provide new documentation to support her opinions in her Medical Source Statement of October 2006. (*Id.*) Fourth, "her opinion is not supported by the findings on examination in Exhibits 4F, 15F and 11F." (*Id.*) Fifth, it appears she relied on the claimant's subjective complaints that are not fully persuasive for the reasons discussed in the decision. (*Id.*) Finally, "Dr. Keatley's opinion is inconsistent with the findings and opinion of Kristi V. Helvig," who concluded a year earlier that Moore had much greater capacity to perform work-related mental activities. (*Id.*)

I find that the ALJ did not give proper weight to the opinions of Dr. Keatley, and that many of his findings are erroneous and/or not supported by substantial evidence. Addressing the ALJ's concerns in the order he made them, I first note that even though Dr. Keatley may be an acceptable medical source only as to speech and language issues, the ALJ was still required to consider her other opinions and to provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d) ("[r]egardless of its source, we will evaluate every

medical opinion we receive"); SSR 96-5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored"). In this case, the ALJ requested that Dr. Keatley complete a Medical Source Statement and mailed it to her for that purpose. (Tr. 272). Having received the Statement from Dr. Keatley, he was obligated to consider it.

I further note that it is unclear from Dr. Keatley's Statement which of her opinions are based on her expertise in speech and language issues, to which she was an acceptable medical source, and which were based on her expertise as a neurotherapist, which is not an acceptable medical source. Any opinions of Dr. Keatley that were based on her expertise in speech and language issues were not properly weighed by the ALJ. The ALJ should have developed this issue. If he felt the Medical Source Statement was not sufficient for him to determine which opinions were based on Dr. Keatley's speech and language expertise, he had a duty to contact Dr. Keatley to develop this issue. 20 CFR 404.1512(e)(1) and 416.912(e)(1); *see also McGoffin*, 288 F.3d at 1252. On remand, I also note that if Dr. Keatley responds to the ALJ's inquiry by stating that her opinions are based on her expertise both in speech and language and as a neurotherapist, *i.e.*, if she is unable to distinguish her areas of expertise in connection with her opinions, this would appear to require the ALJ to consider all her opinions as an acceptable medical source, since they would be based at least in part in her expertise in speech and language.

As to the argument that Dr. Keatley did not provide new documentation to support her Medical Source Statement provided in October 2006, she had provided 21 pages two years earlier. (Tr. 241-261.) The notes provided background and other

diagnostic information regarding the responses provided in October 2006. The ALJ erred in failing to consider this, and in failing to consider any opinions or findings that were made in those notes. *See Washington*, 37 F.3d at 1439. Further, to the extent the ALJ felt the Medical Source Statement was unclear as to how Dr. Keatley reached her assessment, he had a duty to contact her to obtain this information. *McGoffin*, 288 F.3d at 1252. The responsibility for this duty lies entirely on the ALJ and not on the claimant. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).

As to the ALJ's finding that Dr. Keatley's opinion should not be given weight because she treated Plaintiff for only four months, she saw Plaintiff fifteen times more than the consultative examiners whose opinions the ALJ preferred over hers. Further, she performed diagnostic testing of the Plaintiff that Dr. Helvig did not appear to do. These factors must be properly considered on remand.

The fourth reason given by the ALJ to dismiss Dr. Keatley's opinion, that it was not supported by three other medical records, does not appear to be supported by substantial evidence. Dr. Keatley's opinions are supported, at least in part, by the neuropsychological evaluation of Plaintiff performed by Dr. Pierce in June 2004. Dr. Pierce opined that Plaintiff was emotionally distressed and suffering from postconcussion syndrome (Tr. 182). He recommended cognitive rehabilitation while she searched for a new job (*Id*. 183). They are also supported, at least in part, by some of the findings made by Dr. Helvig, as discussed below.

The fifth reason, because "it appears [Dr. Keatley] relied on [Moore's] subjective complaints," is improperly based on the ALJ's speculation. The ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that

-12-

the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints." *Id.* In this case, Dr. Keatley's opinions appear to be based, in large part, on the results of the cognitive abilities tests that she had administered in August and September 2004 or on the new assessment she discussed in her Statement. (Tr. 244, 289-291). Further, it is improper for an ALJ to reject a psychological opinion because it is based on a claimant's responses. *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005) ("[a] psychological opinion ... 'may rest either on observed signs or on psychological tests'") (quoting *Robinson*, 366 F.3d at 1083). "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Id.* "The ALJ cannot reject [a mental health practitioner's] opinion solely for the reason that it was based on [the patient's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the practitioner]." *Id.* at 760. In this case, while Dr. Keating may not have rendered psychological opinions per se, I believe the reasoning expressed above would apply to her opinions since they are similar to those expressed in psychological opinions.

The final reason given by the ALJ for rejecting Dr. Keatley's October 2006 Medical Source Statement was that her opinions were inconsistent with those of Dr. Helvig, the consultative psychological examiner. However, since Dr. Keatley was a treating source, the ALJ had to examine Dr. Helvig's report to see if it outweighed the report of Dr. Keatley, not the other way around. *Goatcher*, 52 F.3d at 289-290. The

-13-

ALJ did not appear to follow that rule. Further, Dr. Keatley's opinions regarding Moore's limitations were rendered more than a year after Dr. Helvig's consultative evaluation, and appear to be based on testing that was different and/or more extensive than that used by Dr. Helvig. These factors also needed to be considered.

Finally, the ALJ failed to consider the fact that Dr. Helvig's findings actually supported Dr. Keatley's opinions, at least in part. Specifically, Dr. Helvig found that Plaintiff had some psychological and/or cognitive limitations which could impact her ability to work, including a "slight difficulty with processing speed and mathematical abilities which could cause minor difficulties in a workplace setting", slow pace and difficulties with persistence caused by impaired interpersonal functioning and depressive symptoms, moderate difficulties adapting to new situations, an increase in symptoms under conditions of increasing stress, and impairments in her ability to relate to others. (Tr. 268.) Dr. Helvig assessed a GAF score of 60, indicating "'moderate symptoms,' or 'moderate difficulty in social, occupational, or school functioning.'" *Roybal v. Astrue*, No. 06-4189, 2007 WL 1475276, at *1 (10th Cir. 2007) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (2000) ["DSM-IV"]). The ALJ failed to acknowledge the extent to which Dr. Helvig's opinions substantiated those of Dr. Keatley.

Based on the foregoing, I find that the reasons provided by the ALJ to give Dr. Keatley's medical records and opinions lesser weight than those of Dr. Helvig are not supported by substantial evidence. The case must be remanded so that the ALJ can properly weigh the opinions of Dr. Keatley. Also on remand, the ALJ needs to accurately explain the weight he has given to Dr. Keatley's opinions, as well as that of

each medical source.  Finally, since the ALJ is reweighing the evidence the ALJ must also reassess Plaintiff's RFC.  I find several problems with the RFC assessed by the ALJ, as explained below.

First, the ALJ found that Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, although he did not state the medical source for this finding.  (Tr. 31.)  Moderate difficulties in maintaining concentration, persistence, or pace would appear to adversely impact the work setting.  The ALJ failed, however, to include this in the RFC or the hypothetical question to the vocational expert, nor did he explain why he did not include that.  This was error.  *See Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, \*5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist . . ., the resulting hypothetical question was flawed").

Second, the ALJ stated in the RFC as to Plaintiff's psychological/cognitive abilities that Plaintiff could carry out, understand, and remember routine and repetitive tasks and instructions in an environment with no frequent changes in work setting or duties.  (Tr. 31, 37.)  The ALJ stated that he gave great weight to Dr. Helvig's report in obtaining this RFC.  (*Id.* 37.)  However, he ignored other findings of Dr. Helvig that could impact Plaintiff's ability to work, including slow pace and difficulties with persistence, an increase in symptoms under conditions of increasing stress, and impairments in her ability to relate to others.  "The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability."  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at \*3 n. 2 (10th Cir. 2004).      Based on all

of the above errors, I find that this case must be remanded to the Commissioner for further fact finding.

        2.        Whether the ALJ Erred in Finding that Plaintiff's Receipt of Unemployment Benefits Diminished Her Credibility

In finding that Plaintiff's complaints were not fully persuasive, the ALJ based this on Plaintiff's receipt of unemployment benefits. The ALJ found that by receiving such benefits, Plaintiff "acknowledged that she was ready, willing and able to work." (Tr. 35, 37.) Plaintiff argues that this assertion is legally erroneous, relying on *Roberts v. Callahan*, 971 F. Supp. 498, 501-02 (D. N.M. 1997); *Alverio v. Chater*, 902 F. Supp. 909, 928 (N.D. Iowa 1995); and *Riley v. Heckler*, 585 F. Supp. 278, 285 (S.D. Ohio 1984).

*Roberts* held that the "[r]eceipt of unemployment benefits. . . does not mean that a claimant is able to work." *Id.*, 971 F. Supp. at 501. After also finding that "[a] desire to work likewise does not mean that a claimant can actually work," *Roberts* found that the ALJ's credibility determination was contrary to law and not supported by substantial evidence. *Id.* at 502. On remand, I direct that the ALJ must also take into account the above authority in connection with assessing Plaintiff's credibility from the receipt of unemployment benefits.

III.    CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 18, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge